## BALTIMORE TRUST CO. v. BELLEVUE MILLS CO. et al.

### (Circuit Court of Appeals, Fourth Circuit.   May 4, 1915.)

### No. 1328.

1. CORPORATIONS ⟪479—SALE OF PROPERTY—ACCOUNTING—LIABILITY.

A corporation issued mortgage bonds of which a trust company received a part, and the stockholders, who were also unsecured creditors, the balance. A plant of the corporation was subsequently sold to a purchaser, who gave notes for the price. The notes were divided between the trust company and the stockholders, under an agreement that the trust company need not surrender any of its bonds until the notes were paid, and until the stockholders had surrendered for cancellation all their bonds, and in default of either the trust company need not account to the corporation or the stockholders for any of the proceeds of the notes. The notes were paid, with interest, and the trust company collected interest on the bonds, and thereafter all the bonds held by it were paid, with interest. *Held*, that the notes were collateral to the bonds, and the trust company was liable to account for the interest received thereon, either to the corporation or to the stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1869, 1872–1874; Dec. Dig. ⟪479.]

2. CORPORATIONS ⟪479—ACCOUNTING—LIABILITY.

Where a corporation and its stockholders attempted to deduct, from the amount payable to a holder of mortgage bonds of the corporation, a sum equivalent to interest which the holder had received on notes given by a purchaser of corporate assets, but the holder insisted on full payment, the corporation and stockholders could pay the interest on the bonds and subsequently compel the holder to account for the interest collected on the notes, especially where a contract between the parties stipulated that the question of liability to account for interest was left open.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1869, 1872–1874; Dec. Dig. ⟪479.]

3. LIMITATION OF ACTIONS ⟪22—SEALED INSTRUMENT—TIME TO SUE.

An action brought December 26, 1913, founded on a contract under seal executed March 30, 1907, was not barred by limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 100–111; Dec. Dig. ⟪22.]

4. INTEREST ⟪11—ACCRUAL OF INTEREST.

Where a trust company, collecting interest on collateral notes, knew that a party with which it had dealings claimed the interest, and there was nothing to show that the company held the interest collected unused for the party, a court of equity, directing payment of the interest collected, could charge the company with interest thereon.

[Ed. Note.—For other cases, see Interest, Cent. Dig. § 22; Dec. Dig. ⟪11.]

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suit by the Bellevue Mills Company and another against the Baltimore Trust Company, trustee and individually. From a decree for complainants (214 Fed. 817), defendant appeals. Affirmed.

W. Calvin Chestnut, of Baltimore, Md. (Gans & Haman, of Baltimore, Md., on the brief), for appellant.

Edgar Allan Poe, of Baltimore, Md., and Joseph De F. Junkin, of Philadelphia, Pa., for appellees.

⟪For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before KNAPP and WOODS, Circuit Judges, and CONNOR, District Judge.

WOODS, Circuit Judge. The Bellevue Mills Company issued mortgage bonds to the amount of $175,000, of which the International Trust Company, succeeded by the Baltimore Trust Company, held $131,500, and Corr and Blythe $43,500. The latter were also unsecured creditors and owners of all the stock of the mills. The mill property covered by the mortgage consisted of three separate factories, the Windsor, Chicora, and Moorehead. The mortgage was reduced by the payment of $5,000 of the bonds held by the International Trust Company. By consent of the parties the Chicora factory was sold to Hamilton Carhartt at the net price above commissions of $127,500. The purchase money was represented by notes, of which the trust company received the later maturities, of the face value of $64,450, at the agreed value of $62,125, and Corr and Blythe the remainder, which they were to use in payment of current debts of the company. These notes were taken by the parties under an agreement dated March 30, 1907, which contains this provision:

"Whenever during the period of three years from the date of the sale of the said Chicora Mills each and all of the notes representing the proceeds of the sale thereof, delivered as aforesaid to the International Trust Company, shall have been paid by or for account of the purchaser thereof, and the said Corr and Blythe shall produce, or cause to be produced, to the International Trust Company of Maryland, as trustee, for cancellation, the sum of forty-three thousand five hundred dollars ($43,500) par value of bonds secured by said deed of trust of February 1, 1906, from the Bellevue Mills to the International Trust Company of Maryland, as trustee, the said International Trust Company of Maryland, as holder of other bonds secured by said deed of trust, will likewise produce and surrender to itself, as trustee, for cancellation, the amount of sixty-two thousand one hundred and twenty-five dollars ($62,125) par value of bonds secured by said deed of trust; but it is understood and agreed that the International Trust Company of Maryland shall be under no obligations to surrender to itself, as trustee, or to the Bellevue Mills Company, any portion of said bonds, except on the express conditions herein mentioned, to wit, the payment by or on account of the said purchaser of all the said notes above referred to, to be delivered to it, and the surrender by or on account of said Corr and Blythe of said forty-three thousand five hundred dollars ($43,500) par value of the bonds of the Bellevue Mills Company, within three years from the time aforesaid, and in default of either of said conditions the said International Trust Company of Maryland shall be under no obligation whatever to account in any way to the Bellevue Mills Company, or to said Corr and Blythe, for any of the proceeds of said notes of the purchaser of the Chicora Mills received by it as herein provided; it being the express understanding and agreement of the parties that the said portion of the proceeds of said sale of the Chicora Mills is in no way a satisfaction in whole or in part of the bonds of the Bellevue Mills Company held by it, except subject to the conditions herein expressly mentioned."

The notes were collected, and the trust company canceled the bonds held by it to the amount of $62,125, as agreed; and all of the other bonds held by it have been paid, with interest thereon. In collecting the notes the trust company collected interest thereon for the same period as that on which it collected interest on the bonds, to the amount of $7,401.18.

[1] In this suit, involving the right of the trust company to retain the interest on the notes, the District Court adjudged that the trust company took and held the Carhartt notes as collateral to the bonds of the Bellevue Mills, and that it must pay back the sum of $7,401.18 and interest thereon, on the principle that a creditor cannot hold interest collected on collateral when he has collected the principal debt and interest. The entire history of the business transactions which brought the plaintiffs and defendants into their relations to the mill property and to each other is set out in the opinion of the District Court, and a restatement here would merely incumber the record.

The contract does not expressly provide for the contingency which has arisen, and we must therefore look to its general tenor, to the relations of the parties, and to their dealings with each other for a solution of the question presented. Consideration of these relations and dealings as shown by the entire evidence, especially the contracts and letters, leaves no doubt that the trust company intended, in all that it did, that Corr and Blythe should assume the risks of the mill business, and that it should have the position of a creditor as against them and the mill company. This is shown, not only by the occurrences which led up to the contract above mentioned, but by the stipulation in it that Corr and Blythe should indorse the Carhartt notes. Again, the provision that the payment of the notes should result in the cancellation of $62,125 of the bonds indicated that the notes and the bonds were considered to represent the same obligation. This relation, namely, that the trust company was seeking repayment of the money it disbursed and avoidance of risk, and that Corr and Blythe were the owners of the stock and assuming the risks of the conduct of the business, makes a strong presumption against an intention that the trust company should receive interest on both bonds and notes for the same time. And it seems clear that the trust company should be required to point to the very words of the paper which confer this right to hold interest on both. This they were unable to do, for the paper is silent on the subject. We have said enough to show that the District Court's conclusion of fact that the notes were collateral to the bonds, and that the trust company was not entitled to the interest on both, is well supported by the evidence and cannot be disturbed.

[2] When the plaintiffs came to pay interest on the bonds, they asserted the right to credit for the interest paid on the notes; but this demand was refused by the defendant. They were not bound to carry their demand to the extent of refusing to pay the interest coupons, and thus bring upon themselves the expense and injury which a suit for foreclosure of the mortgage would have entailed. They were justified under the circumstances in deferring the ultimate assertion of their claims until final settlement and payment of the bonds. Moreover, when Corr and Blythe surrendered for cancellation the bonds held by them, a contract was made which stipulated that the question of the liability of the trust company to account for the interest collected on the Carhartt notes was left open. It follows that the payment of the interest coupons of the bonds cannot be set up by

the defendants as relinquishment of the right to claim an accounting for the interest collected on the collateral notes.

[3] There is no foundation for the plea of the statute of limitations. The contract of March 30, 1907, was under seal, and this action was brought December 26, 1913, to enforce an obligation which arose out of it.

The agreement of June 1, 1912, for the sale of the Windsor Mills does not refer to the Carhartt notes, either directly or indirectly, and it can have no effect as an estoppel.

[4] Counsel for defendant insists that, while the District Judge had the discretion in an equity case to allow interest on a claim of this kind, the discretion was abused in this case, because the money was retained by the trust company under a bona fide claim of right. There is nothing to show that the defendant held this money unused subject to the plaintiff's claim, or on any other ground had an equity to be relieved from the payment of interest on money of the plaintiff which it collected and held as its own against plaintiff's protest. On the contrary, it was engaged in the business of lending money and presumably received interest on this fund.

Affirmed.